## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALCOA CANADA CO. (BAIE-COMEAU SMELTER), ALUMINERIE DE BÉCANCOUR INC., STARR INDEMNITY & LIABILITY COMPANY, and ALCOA CANADA CO., as assignee of ALCOA STEAMSHIP COMPANY, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> THAMESBORG BEHEER B.V., *in personam*, c/o Wagenborg Shipping B.V., P.O. Box 14, 9930 AA Delfzijl, The Netherlands, <br><br> WAGENBORG SHIPPING – DELFZIJL, *in personam*, c/o Wagenborg Shipping B.V., P.O. Box 14, 9930 AA Delfzijl, The Netherlands, <br><br> and <br><br> The M/V THAMESBORG (IMO No. 9546459), her engines, tackle, equipment, and furnishings, etc., *in rem*, <br><br> Defendants. | Civil Action No. <br> _____ <br><br><br> **VERIFIED COMPLAINT IN ADMIRALTY** |

Plaintiffs Alcoa Canada Co. (Baie-Comeau Smelter) ("Alcoa Canada"), Aluminerie de Bécancour Inc. ("ABI"), Starr Indemnity & Liability Company ("Starr") (Alcoa Canada, ABI, and Starr, collectively, the "Cargo Interests"), and Alcoa Canada Co., as assignee of Alcoa Steamship Company, LLC (in such capacity, the "Charterer"), as and for their Verified Complaint herein allege upon information and belief as follows:

### JURISDICTION AND VENUE

1. This controversy arises from the grounding of the M/V THAMESBORG, IMO No. 9546459 (the "Vessel"), on or about September 6, 2025, and the ensuing salvage and general

average, the cargo loss, damage, and expense caused thereby, the salvage and general average security provided by Plaintiffs, and Defendants' breaches of the contracts of carriage and of the governing charter party. This action is within the Court's admiralty and maritime jurisdiction under 28 U.S.C. § 1333 and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Admiralty Rules").

2.    The contracts of carriage and charter party at issue provide for arbitration in New York. Plaintiffs bring this action pursuant to 9 U.S.C. § 8, which entitles a party to an admiralty cause of action, notwithstanding an agreement to arbitrate, to begin its proceeding by libel and seizure of the vessel, whereupon the Court shall direct the parties to proceed with arbitration and shall retain jurisdiction to enter its decree upon the award. Plaintiffs expressly reserve, and do not waive, their rights to arbitrate the merits of their claims in New York.

3.    Venue is proper in this District because the Vessel is now, or will be during the pendency of this action, within this District. Upon information and belief, the Vessel is scheduled to make berth in the Port of Philadelphia, Pennsylvania, on or about July 16, 2026.

## THE PARTIES

4.    Plaintiff Alcoa Canada is a company organized and existing under the laws of Nova Scotia, Canada, with an office and place of business at its Baie-Comeau Smelter, Baie-Comeau, Quebec, Canada. Alcoa Canada was at all material times the owner, consignee, and/or party entitled to possession of the cargo carried aboard the Vessel under Bills of Lading Nos. LIATMHBIA 001, LIATMHBIA 002, LIATMHBIA 003, LIATMHBIA 004, and LIATMHBIA 005, each dated August 18, 2025 (the "Baie-Comeau Bills of Lading").

5.    Plaintiff ABI is a corporation organized and existing under the laws of Quebec, Canada, with an office and place of business at 5555 Rue Pierre-Thibault, Bécancour, Quebec G9H 2T7,

Canada. ABI was at all material times the owner, consignee, and/or party entitled to possession of the cargo carried aboard the Vessel under Bills of Lading Nos. LIATMHBEC 001 and LIATMHBEC 002, each dated August 17, 2025 (the "Bécancour Bills of Lading" and, together with the Baie-Comeau Bills of Lading, the "Bills of Lading").

6.  Plaintiff Starr is a corporation organized and existing under the laws of the State of Texas, with an office and principal place of business in New York, New York. Starr was at all material times the cargo underwriter of the cargoes carried under the Bills of Lading, including under Policy No. MASICCH0208US25, and sues herein in its own right and as subrogee and/or assignee of its assureds to the extent of payments made or security posted, as their interests may appear.

7.  Plaintiff Alcoa Canada Co., as assignee of Alcoa Steamship Company, LLC, sues in its separate capacity as Charterer. Alcoa Steamship Company, LLC entered into a contract of affreightment/voyage charter party dated November 3, 2023 with Defendant Wagenborg Shipping – Delfzijl, as agent to the registered owners (the "Charter Party"). On or about March 24, 2025, pursuant to Clause 15 (Assignment) of the Charter Party, Alcoa Steamship Company, LLC assigned the Charter Party to Alcoa Canada Co., effective as of April 1, 2025, and notice of the assignment was given to Wagenborg Shipping.

8.  Defendant Thamesborg Beheer B.V. ("Registered Owner") is a company organized and existing under the laws of the Netherlands, with an office and place of business c/o Wagenborg Shipping B.V., P.O. Box 14, 9930 AA Delfzijl, The Netherlands. Registered Owner is, and at all material times was, the registered owner of the Vessel. Registered Owner cannot be found within this District.

9.   Defendant Wagenborg Shipping – Delfzijl, upon information and belief also known as or affiliated with Wagenborg Shipping B.V. ("Disponent Owner" and, together with Registered Owner, "Owners"), is a company organized and existing under the laws of the Netherlands, with an office and place of business at P.O. Box 14, 9930 AA Delfzijl, The Netherlands. Disponent Owner was at all material times the disponent owner, operator, and/or manager of the Vessel and a carrier of the cargoes under the Charter Party and the Bills of Lading. Disponent Owner cannot be found within this District.

10. Defendant M/V THAMESBORG is a single-screw general cargo vessel of approximately 172.3 meters length overall, built in 2013, of 14,695 gross tons and 22,109.75 deadweight tons, flying the flag of the Netherlands with port of registry Delfzijl, and bearing IMO No. 9546459. The Vessel is now, or will be during the pendency of this action, within this District.

## FACTS COMMON TO ALL COUNTS

11. In August 2025, a total cargo of 19,124.266 metric tons of baked carbon anode blocks in 6,896 pallets (the "Cargo") was loaded aboard the Vessel at the port of Lianyungang, China, in apparent good order and condition, for carriage to the ports of Baie-Comeau and Bécancour, Quebec, Canada, pursuant to the Charter Party and against issuance of the Bills of Lading, which were clean on board CONGENBILL (1994 edition) bills of lading incorporating the terms of the Charter Party.

12. The Cargo carried under the Bécancour Bills of Lading comprised 4,570.43 metric tons in 1,781 pallets with a total CIF value of US$3,841,285.89. The Cargo carried under the Baie-Comeau Bills of Lading comprised 14,553.836 metric tons in 5,115 pallets with a total CIF value of US$12,241,191.99.

13. On or about September 6, 2025, while proceeding at approximately 13.5 knots in the Franklin Strait en route from Lianyungang to Baie-Comeau, the Vessel grounded on a submerged

4

rock formation at approximate position 71° 21.04′ N, 096° 53.96′ W (the "Grounding"). The Vessel came substantially out of draft with an initial reported list of approximately two degrees to starboard.

14. The Grounding caused extensive damage to the Vessel, including cracking and buckling of the bottom plating and associated stiffeners, bulkheads, and piping between approximately frames 90 and 210, over approximately three-quarters of the breadth of the ship, with permanent repairs estimated at no less than US$6,000,000.

15. On or about September 6, 2025, the Master and/or Owners declared general average.

16. On or about September 8, 2025, Owners entered into a Lloyd's Open Form salvage agreement in respect of the Vessel and her cargo. In the course of the salvage operation, approximately 5,000 metric tons of the Cargo were lightered from the Vessel to the vessels M/V SILVER COPENHAGEN and M/V NUNALIK to facilitate refloating.

17. The salvors acquired a maritime lien over the Cargo for salvage remuneration in respect of the salvage services rendered. In order to release the Cargo from the salvors' maritime lien, the Cargo Interests provided salvage security, including an ISU-1 Salvage Guarantee dated October 14, 2025, in the aggregate amount of approximately US$13,670,106.20.

18. The Cargo Interests further provided general average security in respect of Owners' declaration of general average, including a general average bond dated October 12, 2025 and an underwriters' general average guarantee dated October 13, 2025.

19. By notice dated October 31, 2025, Owners purported to declare a force majeure event under the Charter Party and to discharge the Vessel's contractual obligation to complete delivery of the Cargo to the named ports of destination. By letters dated November 10 and 11, 2025, the

Cargo Interests and the Charterer rejected Owners' force majeure declaration in its entirety and reserved all rights, including the right to recover the costs of completing the carriage.

20. As a result of the Grounding and Owners' breaches described herein, the Cargo sustained physical loss and damage, and the Cargo Interests sustained and will sustain damages including, without limitation: (a) liability for salvage remuneration and amounts paid and payable to salvors under the salvage security posted; (b) general average contributions demanded of the Cargo; (c) physical loss of and damage to the Cargo; (d) cargo-related losses and expenses, including transshipment, storage, handling, and delay-related losses; and (e) surveyors' and other mitigation costs.

21.  As a result of the Grounding and Owners' breaches described herein, Charterer has sustained losses arising from being forced to arrange a mitigation voyage to prevent disruption of the industrial processes in Canada as well as deadfreight on a later voyage caused by late delivery of the Vessel's cargo.

22. Between November 2025 and June 2026, the Cargo Interests, the Charterer, Owners, and Owners' protection and indemnity insurer, NorthStandard EU DAC, negotiated but did not conclude letters of undertaking to secure Plaintiffs' claims in the aggregate amount of US$23,022,221.27, with a 30% uplift, inclusive of interests and costs. No security acceptable to Plaintiffs has been provided, and Plaintiffs' claims remain wholly unsecured.

23. Upon information and belief, the Vessel has since undergone repairs and has returned to commercial trading, and is scheduled to arrive and make berth in the Port of Philadelphia, within this District, on or about July 16, 2026.

**COUNT I**
**(Cargo Interests Against the Vessel In Rem — Breach of the Contracts of Carriage, Unseaworthiness, and Fault of the Vessel)**

24. The Cargo Interests repeat and reallege the allegations contained in paragraphs 1 through 23 above as if fully set forth herein.

25. The Vessel was unseaworthy and unfit for her intended voyage, and Owners and the Vessel breached, failed, and violated their duties and obligations as common carriers of goods by water for hire and/or bailees under the Bills of Lading, the Charter Party, the Carriage of Goods by Sea Act, 46 U.S.C. § 30701 note ("COGSA"), and the general maritime law, and were negligent and otherwise at fault, including in the navigation and management of the Vessel and in failing to exercise due diligence to make the Vessel seaworthy before and at the beginning of the voyage.

26. By reason of the foregoing, the Cargo was subjected to the salvors' maritime lien and to general average demands, sustained physical loss and damage, and the Cargo Interests were required to post salvage and general average security and incurred and will incur the damages described above, none of which was caused or contributed to by any fault, negligence, or want of care on the part of the Cargo Interests.

27. The Cargo Interests have maritime lien claims against the Vessel for the aforesaid loss, damage, liabilities, and expenses, and are entitled to arrest the Vessel pursuant to Rule C of the Supplemental Admiralty Rules to enforce those maritime liens.

28. By reason of the foregoing, the Vessel is liable to the Cargo Interests in the amount, as near as may now be estimated, of US$4,993,671.67 in respect of the cargo carried under the Bécancour Bills of Lading and US$15,913,549.60 in respect of the cargo carried under the Baie-Comeau Bills of Lading, for a total of US$20,907,221.27, inclusive of interest, costs, and attorneys' fees.

7

## COUNT II
### (Cargo Interests Against Owners In Personam)

29. The Cargo Interests repeat and reallege the allegations contained in paragraphs 1 through 28 above as if fully set forth herein.

30. By reason of the foregoing premises, Owners breached their obligations as carriers and/or bailees of the Cargo under the Bills of Lading, the Charter Party, COGSA, and the general maritime law, failed to exercise due diligence to make the Vessel seaworthy, and were negligent and otherwise at fault.

31. By reason of the foregoing, Owners are jointly and severally liable in personam to the Cargo Interests in the total amount, as near as may now be estimated, of US$20,907,221.27, inclusive of interest, costs, and attorneys' fees.

32. Because Owners cannot be found within this District within the meaning of Rule B of the Supplemental Admiralty Rules, the Cargo Interests are entitled to an attachment of Owners' tangible and intangible property within this District, up to the amount sued for, including the Vessel, pursuant to Supplemental Admiralty Rule B.

## COUNT III
### (Charterer Against Owners In Personam and the Vessel In Rem — Breach of the Charter Party)

33. The Charterer repeats and realleges the allegations contained in paragraphs 1 through 32 above as if fully set forth herein.

34. Owners breached the Charter Party by, among other things, providing an unseaworthy vessel, failing to prosecute the voyage with due dispatch, grounding the Vessel, failing and refusing to complete the carriage and delivery of the Cargo to the named ports of destination, and wrongfully invoking force majeure to excuse non-performance.

35. By reason of the foregoing, the Charterer sustained damages including, without limitation, costs related to a mitigation voyage as well as deadfreight related to the late delivery of

the Vessel's cargo, and other losses and expenses arising from Owners' failure to complete delivery, in the amount, as near as may now be estimated, of US$2,115,000.00, inclusive of interest, costs, and attorneys' fees.

36. The Charterer has a maritime lien against the Vessel for Owners' breaches of the Charter Party and is entitled to arrest the Vessel pursuant to Supplemental Admiralty Rule C to enforce that lien, and, because Owners cannot be found within this District, the Charterer is further entitled to an attachment of Owners' property within this District pursuant to Supplemental Admiralty Rule B.

**WHEREFORE**, Plaintiffs pray that this Court:

a. Issue a Warrant for the Arrest of the M/V THAMESBORG (IMO No. 9546459), her engines, tackle, equipment, and furnishings, etc., pursuant to Supplemental Admiralty Rule C, to enforce Plaintiffs' maritime liens in the aggregate amount of US$23,022,221.27;

b. Issue Process of Maritime Attachment and Garnishment pursuant to Supplemental Admiralty Rule B in the amount of US$23,022,221.27, inclusive of interests, costs and attorneys' fees, against Owners, to be executed against the Vessel and any other tangible or intangible property of Owners found within this District;

c. Direct that any person claiming an interest in the arrested or attached property be required to file a verified statement of right or interest and answer as provided in Supplemental Admiralty Rules B, C, and E;

d. Order that Plaintiffs' claims be secured by the Vessel and/or by substitute security in an amount and form satisfactory to Plaintiffs or fixed by the Court pursuant to Supplemental Admiralty Rule E(5), and order an appraisal of the Vessel if and to the extent necessary;

e.   Pursuant to 9 U.S.C. § 8, direct the parties to proceed to arbitration in New York in accordance with the arbitration agreements in the Charter Party and Bills of Lading, and retain jurisdiction to enter judgment upon any award and to enforce any security given herein;

f.   In the alternative, enter judgment in favor of Plaintiffs and against Defendants in the amount of US$23,022,221.27, inclusive of interest, costs, and attorneys' fees; and

g.   Grant such other and further relief as the Court deems just and proper.

Dated:    Philadelphia, Pennsylvania
          July 16, 2026

Respectfully submitted,

**KENNEDYS CMK LLP**

By:  /s/ Elizabeth A. Sutton
Elizabeth A. Sutton (PA ID No. 205904)
1600 Market Street, Suite 1410
Philadelphia, Pennsylvania 19103
Tel: (267) 479-6790
Email: Elizabeth.Sutton@kennedyslaw.com

Frank Jordan, Esq. (pro hac vice admission forthcoming)
William M. Fennell, Esq. (pro hac vice admission forthcoming)
22 Vanderbilt Avenue, Suite 2400
New York, New York 10017
Tel: (646) 625-3979
Email: Frank.Jordan@kennedyslaw.com
          William.Fennell@kennedyslaw.com
*Attorneys for Plaintiffs Alcoa Canada Co. (Baie-Comeau Smelter), Aluminerie de Bécancour Inc., and Starr Indemnity & Liability Company*

10

- and -

**HOHENSTEIN & PARKINSON, LLP**
James H. Hohenstein, Esq. (pro hac vice
admission forthcoming)
385 South End Avenue, #5K
New York, New York 10280
Tel: (917) 873-2528
Email: jim.hohenstein@hplawnyc.com
*Attorneys for Plaintiff Alcoa Canada Co., as
assignee of Alcoa Steamship Company, LLC*

11

## VERIFICATION

I, **FRANK JORDAN**, declare under penalty of perjury, the following:

I am a partner of the firm of Kennedys CMK LLP, attorneys for the Plaintiffs in the above-entitled action; I have read the foregoing Verified Complaint and know its contents, and it is true and correct to the best of my knowledge, information, and belief; the sources of my knowledge, information, and belief are the files maintained by my office pertaining to this matter and reports and documents provided by Plaintiffs, their representatives, and their agents. I am authorized by the Plaintiffs in this action to make this verification on their behalf, and I make this verification as attorney for the Plaintiffs because Plaintiffs are corporations organized under the laws of foreign jurisdictions or with offices outside this District, and none of their officers is presently within this District and available to make this verification in view of the exigent circumstances.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 16, 2026.

_____
**FRANK JORDAN**